**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,**

**v.**

**VERMONT MUTUAL INSURANCE COMPANY, Defendant.**

No. 2:93–CV–38.

United States District Court, D. Vermont.

Sept. 20, 1993.

Robert H. Erdmann, Dinse, Erdmann & Clapp, Burlington, VT, for plaintiff.

Ellen M. Coogan, Law Office of Robert A. Mello, Burlington, VT, for defendant.

## OPINION AND ORDER

PARKER, Chief Judge.

This is a declaratory judgment action grounded in federal diversity jurisdiction. Insurance Company of North America ("ICNA") seeks a declaration from this Court that it has no obligation to contribute to attorneys fees incurred in and/or the payment of a judgment obtained in a prior civil action in this Court. These costs were incurred by the defendant in the instant action,

Vermont Mutual Insurance Company ("VMIC"), insurer of one of the defendants in the prior civil action. VMIC has moved to dismiss the instant declaratory judgment action under the abstention doctrine enunciated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, *reh'g denied,* 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976), on the grounds that a parallel proceeding is pending in state court.

## I. BACKGROUND

The pleadings in this case reveal the following factual background. In December 1987, Virginia and Gary Wilson ("the Wilsons") leased premises known as the Highlands Restaurant in Bellows Falls, Vermont, from C. Anthony Adlerbert and Lawrence Kasser, d/b/a Preferred Motor Inns ("PMI"). The restaurant was a portion of the Adlerbert/Kasser property. The Wilsons insured their interest in the leased premises with ICNA, naming PMI as an additional insured. The Wilsons were also insured by CNA Insurance Company. PMI was separately insured by VMIC.

In 1989, both the Wilsons and PMI were sued in a civil action in this Court for damages arising out of a fire that occurred on October 9, 1988. ICNA denied coverage to the Wilsons on the basis of an exclusionary provision in the insurance policy. CNA Insurance Company defended the Wilsons in that lawsuit and they were dismissed from the action shortly before trial. VMIC retained the services of a law firm to defend PMI. Just prior to trial, VMIC sought to have ICNA participate in PMI's defense, claiming that both insurers owed PMI a duty to defend and indemnify. ICNA declined to afford coverage to PMI under the Wilson's policy and declined to participate in their defense.

The trial resulted in a plaintiff's verdict, which was settled after verdict by compromise. The terms of that settlement required VMIC, on behalf of PMI, to pay certain claimants $54,280. VMIC also allegedly incurred attorneys fees and other defense costs in the amount of $111,427.48.

Thereafter, on September 28, 1992, VMIC filed a lawsuit in a Vermont state court seeking contribution from ICNA in the amount of $64,279.99 plus interest.[1] In that action VMIC alleged that both VMIC and ICNA were primary insurers for PMI and further claimed that PMI, as an additional insured on the Wilson's policy, was entitled to coverage under that policy. Accordingly, both VMIC and ICNA had concurrent obligations to defend and indemnify their common insured, PMI. Thus, VMIC argues, both have an obligation to contribute equally toward the costs of defense and indemnity for any judgment against PMI up to their respective policy limits.

On February 1, 1993, ICNA filed the instant declaratory judgment action raising issues that are identical to those raised in the state court action. ICNA seeks a judgment declaring that it does not have an obligation to contribute toward the defense costs or the judgment paid by VMIC on behalf of PMI. It is precisely this contribution, a matter solely resolved by reference to state law, which VMIC seeks in the state court action. The proceedings are thus parallel, with the federal court having concurrent jurisdiction over the issues raised by virtue of its diversity jurisdiction. Because the federal action parallels the state action, VMIC asserts that this Court should decline to exercise its jurisdiction over the matter in the interest of wise administration of judicial resources. VMIC, however, has failed to sustain its burden of showing that this case presents exceptional circumstances warranting a dismissal under *Colorado River.* As stated below, I cannot agree that a careful balancing of the pertinent factors in this case support dismissal under the doctrine enunciated in *Colorado River* and its progeny. I do, however, agree that these factors support dismissal based on my discretion to decline to hear declaratory judgment actions pursuant to 28 U.S.C.

1. VMIC acknowledges that ICNA contributed $18,573.75 toward the judgment, but claims that ICNA should have contributed $27,140. In addition, VMIC claims contribution from ICNA toward attorneys fees and costs in the amount of $55,713.74 bringing the total amount of contribution sought to $64,279.99.

§ 2201. VMIC has blended these arguments, but they are really two distinct principles, either of which may support dismissal. Accordingly, they are discussed separately.

## II. THE *COLORADO RIVER* DOCTRINE

■ "The federal courts have a fundamental obligation to adjudicate controversies within their jurisdiction." *Law Enforcement Ins. Co., Ltd. v. Corcoran,* 807 F.2d 38, 39 (2d Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987). Diversity jurisdiction is no exception. "[S]o long as Congress chooses to have us exercise diversity jurisdiction, we must do so unflaggingly." *Id.* at 41. Questions regarding a federal court's exercise of its diversity jurisdiction begin, then, with the presumption of exercising that jurisdiction. As noted by the Supreme Court, abstention from the exercise of federal jurisdiction should be the exception and not the rule. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984).

■ Notwithstanding this premise, the Supreme Court has identified three types of cases in which abstention is appropriate. First, it is appropriate in cases presenting constitutional issues that might be mooted out or modified by a state court determination on state law issues. *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In addition, abstention is warranted in cases where a federal court's review of difficult questions of state law would be disruptive to the state's efforts to establish a coherent policy with respect to issues of public concern. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, *reh'g denied,* 320 U.S. 214, 63 S.Ct. 1442, 87 L.Ed. 1851 (1943). Finally, when federal jurisdiction is invoked for the purpose of restraining state criminal proceedings and the case does not involve allegations of bad faith, harassment, or a patently invalid state statute, a federal court should abstain from exercising its jurisdiction. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See also Colorado River,* 424 U.S. at 814–16, 96 S.Ct. at 1244–46. None of these doctrines applies in the case at hand, which appears to involve a rather simple question of insurance contract law: does an exclusion provision apply, and if not, is contribution warranted?

■ Given the nature of the case, VMIC has chosen to seek dismissal upon the grounds of wise judicial administration, a doctrine which emerged from the *Colorado River* case. That avenue for dismissal was further clarified in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (court obligated to exercise jurisdiction when there is a failure to show requisite exceptional circumstances under *Colorado River* ). As both the language and result in *Moses* makes clear, the mere pendency of an action in state court will not bar proceedings concerning the same matter in a federal court. *Moses,* 460 U.S. at 15, 103 S.Ct. at 936. Absent one of the traditional forms of abstention, to decline jurisdiction under the *Colorado River* doctrine, a court must find exceptional circumstances that outweigh the heavy presumption in favor of exercising jurisdiction and those exceptional circumstances must present the clearest justification for dismissal. *Id.* at 25, 103 S.Ct. at 942.

■ Although there is no hard-and-fast rule for *Colorado River*-type dismissals, the Supreme Court has identified several factors for consideration: (1) Whether either court assumed jurisdiction over any res or property; (2) the inconvenience of the federal forum as compared to the convenience of the state forum; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether state or federal law provides the rule of decision on the merits; and (6) the inadequacy of the state court proceedings to protect the parties' rights, as well as other factors which may be particular to the case at bar. *Id.* at 15–16, 103 S.Ct. at 936–37. No one factor is determinative. *Id.*

■ This Court then, is guided by a careful balancing of these factors "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16, 103 S.Ct. at 937. VMIC concedes that in this case, the first of the factors, assumption of jurisdiction over any res or property, is not applicable. That

fact alone supports the exercise of jurisdiction. *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir.1989).

Second, as pointed out by ICNA, the federal forum can hardly be considered inconvenient to the parties. ICNA's principal place of business is located in Philadelphia, Pennsylvania. A direct flight to Burlington is available from that city. VMIC's principal place of business is in Montpelier, Vermont, a city with immediate access to Interstate 89 and only 38 miles from Burlington, Vermont by car. The state forum, located in Montpelier, Vermont is equally convenient. VMIC need not travel at all, and Montpelier is a direct flight and a one-half hour drive by car for ICNA.

Third, there is no danger of piecemeal litigation. Both the state and the federal suit raise identical issues; the difference lies in the remedies sought. In the state proceeding, VMIC seeks damages under a theory of contribution while in the federal proceeding, ICNA seeks a declaratory judgment stating that it has no contribution obligation. What is inevitable is not piecemeal litigation, but rather, that the result of one suit will be given res judicata effect over the other.

VMIC contends that such circumstances will give rise to a race between the forums to see which forum will the resolve the same issues first. Such a race would be destructive and prejudicial to the possibility of reasoned decision making in either forum. In support of this position, VMIC cites a 1983 Supreme Court case, *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 567–68, 103 S.Ct. 3201, 3213–14, 77 L.Ed.2d 837, *reh'g denied*, 464 U.S. 874, 104 S.Ct. 209, 78 L.Ed.2d 185 (1983). VMIC excerpts a snippet of language from that decision to persuade this Court that such prejudice militates in favor of abstention. The *San Carlos Apache Tribe* case, however, like *Colorado River*, involved water rights issues. In resolving both cases, the Supreme Court relied principally on the distinctly unique nature of the suits, and the existence of an expert and administrative machinery in the state forum for dealing with water rights issues.

In resolving these cases in favor of dismissal, the Court was also persuaded by the federal policies underlying the McCarran Amendment, which allows and encourages state courts to undertake adjudications of water rights issues. *Id.* at 569–71, 103 S.Ct. at 3215–16. When the Court spoke to the issue of res judicata and the race to the finish, it did so out of concern that such a race was contrary to the entire spirit of the McCarran Amendment. *Id.* at 567, 103 S.Ct. at 3214. In addition, the Court noted that it was prejudicial to "the possibility of reasoned decision making by either forum." *Id.* at 567–68, 103 S.Ct. at 3214. But again, the focus of the Court's attention was on the McCarran Amendment. This coupled nature of the Court's rationale hardly supports an interpretation that a singular arm of that reasoning would provide the clearest justification for dismissal.

■ Fourth, regarding the issue of which forum obtained jurisdiction first, the question is not simply which court obtained the first filing; instead, the court must look to the progress made in each of the forums. *Moses*, 460 U.S. at 21, 103 S.Ct. at 940; *De Cisneros*, 871 F.2d at 308. Where both are in initial discovery phases, as is the case here, this factor cannot be said to support dismissal. *De Cisneros*, 871 F.2d at 308.

Fifth, the fact that the rule of decision will be derived from state law is of minimal value in this case: the issues presented are not novel. Without the presence of a novel or sensitive issue of state law, no significant weight can be given the fact that state law applies. *See id.* at 309. Only in rare circumstances will the presence of state law issues weigh in favor of the surrender of jurisdiction. *Moses*, 460 U.S. at 26, 103 S.Ct. at 942. VMIC has failed to convince the Court that the case before me is one of those rare instances.

The final factor does support dismissal. The state court proceeding is certainly adequate to resolve the parties dispute. However, this factor alone fails to overcome the heavy presumption VMIC faces under *Colorado River* and *Moses*. Having weighed these various factors as they appear in this lawsuit, it is clear that dismissal is not clearly

justified and thus is not appropriately grounded in the *Colorado River* doctrine.

On the other hand, some of the factors discussed above suggests an alternative ground for dismissal; one rooted in this Court's discretion to decline to hear declaratory judgment actions. In particular, I note the adequacy of the state proceeding in resolving the issues raised by the parties, and the potential, however slight, for a race to the finish when parallel actions are pending in state and federal court.

## III. THE DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

The Declaratory Judgment Act, 28 U.S.C. § 2201, which grants a court the power to declare the rights of the parties regardless of whether further relief is requested, is a non-jurisdictional statute. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). The statute expands the type of relief available in a federal court, but it does not expand the court's subject matter jurisdiction. *Id.* Thus, a party seeking declaratory judgment relief must first establish a separate, independent basis for subject matter jurisdiction.

The case at bar properly invokes the Court's diversity jurisdiction. The parties are from different states and the amount in controversy, the alleged contribution due, is greater than $50,000. 28 U.S.C. § 1332. Furthermore, an actual controversy most certainly exists: VMIC has sued ICNA in state court. Thus, subject matter jurisdiction has been established. Recognizing that declaratory relief is a discretionary matter, 28 U.S.C. § 2201, the question the Court now confronts is whether this lawsuit is an appropriate one for declaratory judgment.

The Declaratory Judgment Act provides, in pertinent part:

(a) In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). The Second Circuit has interpreted this provision to require that a court entertain a declaratory judgment action: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Casualty Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir.1992).

With regard to the first prong, when two actions are pending, one in a state court and one in a federal court, both of which arise out of the same set of facts, declaratory judgment actions should be heard when the legal issues in the two case are different. *Id.* In such circumstances, the federal declaratory judgment action will clarify and settle certain legal issues not raised in the state action. But such is not the case here. The federal declaratory judgment action filed by ICNA is parallel to the action filed by VMIC in state court. ICNA argues that the federal and state actions are distinct because in the state action, VMIC *assumes* that the policy issued by ICNA covers PMI while ICNA contends in the federal action that the policy does not provide coverage. That distinction is meaningless. Both cases involve the question of contribution, which in turn, will be determined by reference to the insurance policy provisions. Identical legal issues are pursued in each case.

As to the second prong of the declaratory judgment standard, I can see no reason why the state proceeding filed by VMIC will not fully and adequately resolve the parties' dispute. With that finding in mind, I agree with the approach other courts have taken in dismissing declaratory judgment actions if a pending state court proceeding will satisfactorily resolve the parties' dispute. *See, e.g., Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992) (district court should have exercised discretion to decline to entertain insurer's declaratory judgment action when primary litigation was pending in state court); *Torch, Inc. v. LeBlanc*, 947 F.2d 193 (5th Cir.1991)

(dismissal of declaratory judgment action upheld where there was pending parallel state proceeding which could resolve the dispute); *Continental Casualty Co. v. Robsac Industries*, 947 F.2d 1367 (9th Cir.1991) (reversing grant of declaratory relief where pending parallel state proceeding would resolve dispute). Rightly so; duplicative litigation is a complete waste of judicial resources, particularly when the party seeking declaratory relief has stated no reason why a pending parallel state court proceeding will not adequately resolve the controversy.

Moreover, I note that removal of VMIC's case from the state court to a federal court was an alternative available to ICNA in the initial stage of the parallel state proceeding. *See* 28 U.S.C. § 1441. For reasons unknown to the Court, ICNA did not pursue that avenue. Instead, ICNA now apparently seeks to by-pass the restrictive thirty day statutory period for removal, 28 U.S.C. § 1446(b), by filing a direct action in this Court for declaratory relief. Declaratory judgment actions were not intended to "enable a party to obtain a change of tribunal from a state to federal court...." 10A Charles A. Wright, et al., *Federal Practice and Procedure* § 2758 at 630–31 (1983).

In sum, I do not find the case before me an appropriate one for declaratory relief and exercise my discretion pursuant to 28 U.S.C. § 2201 to decline to afford the plaintiff such relief. This action is dismissed without prejudice.

### Conclusion

Defendant's motion to dismiss this case is hereby GRANTED. (Paper 4). This case is DISMISSED WITHOUT PREJUDICE, and judgment should issue pursuant to Federal Rule of Civil Procedure 58.